UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Charles Hrebal,<br><br>Plaintiff,<br><br>v.<br><br>Nationstar Mortgage LLC d/b/a/ Mr. Cooper, *as successor to Seterus, Inc.*,<br><br>Defendant.[1] | Case No. 17-cv-1815 (SRN/SER)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Mark L. Vavreck, Gonko & Vavreck PLLC, 401 North Third Street, Suite 600, Minneapolis, MN 55401 and Thomas J. Lyons, Jr., Consumer Justice Center PA, 367 Commerce Court, Vadnais Heights, MN 55127 for Plaintiff.

Ernest P. Wagner, Maurice Wutscher LLP, 105 West Madison Street, Suite 1800, Chicago, IL 60602; Eric Tsai, Maurice Wutscher LLP, 71 Stevenson Street, Suite 400, San Francisco, CA 94105; and Eldon J. Spencer, Jr. and Thomas C. Atmore, Leonard, O'Brien, Spencer, Gale & Sayre Ltd., 100 South Fifth Street, Suite 2500, Minneapolis, MN 55402 for Defendant.

SUSAN RICHARD NELSON, United States District Judge

The Court has discussed the background of this Fair Credit Reporting Act ("FCRA") litigation in two prior orders, and therefore assumes both parties' familiarity with the relevant

---

[1] The Court's prior orders have referred to "Seterus" as the defendant in this matter. However, because Nationstar Mortgage (*i.e.*, "Mr. Cooper") recently purchased Seterus, and has thereby stepped into Seterus's shoes in all relevant respects, the Court will use the above-titled caption, in accordance with the parties' May 7, 2019 stipulation. (*See* May 13, 2019 Order on Stipulation [Doc. No. 84] (adopting stipulation "in accordance with Fed. R. Civ. P. 15").)

facts and legal principles. (*See* Summ. J. Order [Doc. No. 61][2]; Order Granting Pl.'s Request to Move for Reconsideration [Doc. No. 76].) After carefully considering the parties' letter briefs on the issue of reconsideration, the Court has been persuaded that it erred in not granting Plaintiff Charles Hrebal (hereinafter "Hrebal") partial summary judgment on his FCRA claim. The Court accordingly grants Hrebal summary judgment under 15 U.S.C. § 1681*o*, on grounds that Defendant Mr. Cooper negligently violated 15 U.S.C. § 1681s-2(b)(1) when it repeatedly failed to report Hrebal's mortgage delinquency as "disputed" in response to the at-issue ACDVs. However, a jury trial remains necessary to determine (1) what, if any, "actual damages" Hrebal suffered as a result of this FCRA violation[3]; (2) whether Mr. Cooper "willfully" or "recklessly" committed this legal violation; and (3) if the answer to (2) is yes, what, if any, "punitive damages" should be levied on Mr. Cooper.

The Court reaches this decision for two key reasons. ***First***, after carefully re-reviewing the factual record, the Court is now convinced that there are no material factual disputes for a jury to resolve with respect to liability. The FCRA imposes liability on "furnishers" of consumer credit information, like Mr. Cooper, who fail to report that a loan delinquency is "disputed," if a "reasonable investigation" could have uncovered that a borrower's dispute with that delinquency was "bona fide" or "potentially meritorious." (*See* Summ. J. Order at 20.) This is so because reporting that a delinquency is, in fact, disputed may be necessary to

---

[2]     This Order may also be found at 598 B.R. 252 (D. Minn. 2019).

[3]     For the reasons explained in the Summary Judgment order, Hrebal's "actual damages" claim is limited to damages arising out of his alleged "emotional distress." (*See* Summ. J. Order at 32-36.)

prevent the dissemination of "materially misleading" consumer credit information. (*Id*. at 20, 25.)[4]

Here, there is no dispute (1) that Mr. Cooper received at least three official dispute notifications from Hrebal (by way of the credit reporting agencies ("CRAs")), all of which showed that Hrebal disputed Mr. Cooper reporting him as delinquent on his mortgage, especially in light of his recent Chapter 13 bankruptcy discharge; (2) that, although Mr. Cooper could have looked through Hrebal's pre-2014 servicing notes (from when a different company serviced Hrebal's mortgage) and gleaned that Hrebal's dispute stemmed from a legitimate and longstanding "proof of claim error," neither agent who responded to Hrebal's dispute notifications did so[5]; (3) that Mr. Cooper did not raise Hrebal's dispute with an internal "specialized bankruptcy department," despite having had the ability to do so; (4) that Mr. Cooper instead confirmed Hrebal's delinquency three times, in a confusing and inconsistent manner, based solely on a cursory review of the company's recent payment

---

[4] This "failure to report a debt as disputed" theory of liability is distinct from, and narrower than, a theory of liability that focuses on whether a furnisher reported *per se* "inaccurate" information, *e.g.*, reporting the existence of a non-existent or blatantly unenforceable debt. (*See* Summ. J. Order at 20 (noting that the circuit courts have unanimously held that the FCRA prohibits furnishers from reporting *either* "inaccurate" credit information *or* "technically accurate" information that is nonetheless "materially misleading"); *accord* 15 U.S.C. § 1681s-2(b)(1)(D)-(E) (barring furnishers from reporting "inaccurate *or* incomplete" information).) Although Hrebal asserted both theories of liability in his summary judgment papers, in order to avoid unnecessarily opining on a related question of bankruptcy law, the Court only considered the narrower "materially misleading" "failure to report a debt as disputed" theory. (*See* Summ. J. Order at 15-17, 26-28.)

[5] In fact, as Mr. Cooper's corporate representative conceded at this deposition, nobody at the company deduced the source of Hrebal's "well-founded confusion" until months into *this* litigation. (*See* Summ. J. Order at 11, 24.)

history records; (5) that, in so doing, Mr. Cooper did not, in any way, affirm the legitimacy of Hrebal's dispute, despite having codes that explicitly allowed its agents to do so; and (6) that this reporting gave the impression that Hrebal had fallen behind on his mortgage immediately after emerging from his Chapter 13 bankruptcy, even though Hrebal had not missed a mortgage payment in over five years, and any delinquency in his account stemmed more from internal confusion on his mortgage servicer's part than from financial irresponsibility on Hrebal's part.

These facts emphatically support a finding that Mr. Cooper negligently violated the FCRA, in that a "reasonable investigation" of the at-issue ACDVs would have resulted in Mr. Cooper discovering that Hrebal's dispute was, at the least, "bona fide," which should then have resulted in Mr. Cooper reporting Hrebal's delinquency as "disputed" to the CRAs, with one of the company's "dispute" codes. (*See* Summ. J. Order at 9 (describing such codes).)

Although Mr. Cooper argues that liability remains a jury question because of other facts in the record (*see* Mr. Cooper Br. [Doc. No. 81] at 1-3), upon close inspection, the Court finds that these facts are either immaterial, or go to the question of Mr. Cooper's "mens rea," *i.e.*, whether Mr. Cooper acted recklessly/intentionally, rather than to liability *per se*. For instance, in its brief in opposition, Mr. Cooper focuses heavily on the facts that it (allegedly) "never told [Hrebal] his loan was current,"[6] and, indeed, gave Hrebal a chance to correct any

---

6     (*But cf.* Servicing Notes [Doc. No. 47] at 3 (entry noting that, as of January 2012, "monthly statements" sent to Hrebal were stating that Hrebal was "current in his payments," even though, under Mr. Cooper's theory of the case, Hrebal had been delinquent from approximately September 2010); *accord* Summ. J. Order at 4-5 (highlighting that Hrebal and his wife recalled receiving such assurances).)

4

error in his account in its "Response to the Bankruptcy Trustee's Notice of Final Cure." (*Id.*) However, that Mr. Cooper might have been consistent in its pre-ACDV responses to Hrebal, or that it might have attempted to abide by proper bankruptcy procedures in providing Hrebal notice of his delinquency, only shows that Mr. Cooper's post-ACDV failure to discover the root of Hrebal's dispute, and then acknowledge the "potentially meritorious" nature of that dispute, may have arisen from mere, one-off "negligence," rather than from a reckless or intentional disregard for the FCRA's provisions. (*Accord* Summ. J. Order at 21, 30 ("[I]nconsistent responses in the face of numerous requests from [the consumer] and inquiries from the CRAs" may evince a furnisher's "willfulness in failing to comply with the FCRA.") (quoting *Schaffhausen v. Bank of America, N.A.*, 393 F. Supp. 2d 853, 859 (D. Minn. 2004).)

As such, although Mr. Cooper has raised serious legal arguments in this case, which the Court discussed at length in its summary judgment opinion, there are simply no *factual* disputes for a jury to resolve at trial, at least with respect to liability under 15 U.S.C. § 1681*o*.

***Second***, apart from the lack of material factual disputes, a re-examination of the relevant case law, including the new cases cited by Hrebal in his motion for reconsideration, convinces the Court that it is not as unprecedented for a Court to grant a plaintiff summary judgment on a 15 U.S.C. § 1681*o* claim as it originally believed. (*See* Summ. J. Order at 29 n.17.) Notably, in the last four years alone, at least four federal district courts have granted a plaintiff partial summary judgment under the "failure to report a debt as disputed" theory of liability discussed herein, while reserving the issues of "mens rea" and "actual damages" for trial. *See Long v. Pendrick Capital Partners, LLC*, --- F. Supp. 3d ---, 2019 WL 1255300, at *7-9 (D. Md. Mar. 18, 2019); *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 853-55 (E.D.

5

Va. 2017); *Ballinger v. Ocwen Loan Servs., LLC*, No. 15-cv-252 (JAJ/HCA), Doc. No. 190 at 12-15 (S.D. Iowa Sept. 25, 2017); *Vasquez-Estrada v. Collecto, Inc.*, No. 14-cv-1422 (ST), 2015 WL 6163971, at *5-6 (D. Or. Oct. 20, 2015); *cf. Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1302 (11th Cir. 2019) (affirming district court's grant of partial summary judgment to plaintiff-consumer because furnisher plainly "failed to conduct a reasonable investigation" into consumer's dispute). The Court was not aware of this law at the time it rendered its summary judgment decision.

Moreover, although Mr. Cooper argues that these cases all involved furnishers reporting debts that were "indisputably unenforceable" (Mr. Cooper Br. at 4), and are therefore distinguishable from this action (because the Court declined to definitively determine the enforceability of the at-issue mortgage arrears, *see* Summ. J. Order at 15-17), the Court finds that that is not exactly right. Rather, in most of these cases, the defendant furnisher argued that it *was* entitled to collect a debt that the consumer was disputing, as Mr. Cooper is here. Nevertheless, those courts held, because a "reasonable investigation" would have uncovered that the consumer's dispute was, at the least, "bona fide," the furnisher still needed to mark the debt as "disputed." *See, e.g.*, *Wood*, 277 F. Supp. 3d at 854-55 (ruling that it is "materially misleading" to continually report a dispute as "resolved" when the consumer, through the filing of ACDVs, "continue[s] to dispute the validity of" the at-issue debt); *see also Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008) (noting that "a disputed debt differs materially from an undisputed debt *even if the consumer would not succeed at a trial of the dispute*") (emphasis added).

6

Thus, this case law further supports the conclusion that, upon reconsideration, partial summary judgment is warranted here.[7]

Consequently, based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Hrebal's Motion for Reconsideration [Doc. No. 77] is **GRANTED**. The Court accordingly enters partial summary judgment in Hrebal's favor, in the manner explained herein. All other pre-trial deadlines remain in effect. (*See* Doc. No. 71.)

Dated: June 14, 2019             **/s/ Susan Richard Nelson**
SUSAN RICHARD NELSON
United States District Judge

---

[7] In reaching this decision, the Court also considered the case law cited by Mr. Cooper in its briefing. (*See* Mr. Cooper Br. at 4-5.) However, the Court finds this law unavailing. Most importantly, none of Mr. Cooper's cited cases deal with the "failure to report a debt as disputed" theory of liability that the Court relies on here. And, although the Court in *Herrell v. Chase Bank* makes a fair point that furnishers should not be required to "*resolve*" complex legal disputes as part of their "reasonable investigation," 218 F. Supp. 3d 788, 793 (E.D. Wis. 2014), the mere existence of a complex legal dispute in the background of a consumer credit dispute does not prevent a furnisher's agent from thoroughly investigating that dispute and then determining that the dispute is "bona fide" or "*potentially* meritorious," especially when the *facts* available to that agent suggest that the dispute is longstanding and rooted in internal error, as was the case here. If anything, the presence of a potential legal dispute in such a context should put a furnisher on even greater notice that a debt should at least be reported as "disputed," in order to prevent the dissemination of "incomplete," or "materially misleading," credit information. 15 U.S.C. § 1681s-2(b)(1).